**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Patrick Carl GAST, Defendant-Appellant.**

No. 71-1391.

United States Court of Appeals,
Seventh Circuit.

Feb. 24, 1972.

Certiorari Denied June 7, 1972.
See 92 S.Ct. 2426.

Thomas C. Eckerle, Madison, Wis., for defendant-appellant.

John O. Olson, U. S. Atty., James R. Mack, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before MAJOR, Senior Circuit Judge,[1] KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

This is an appeal from defendant Gast's conviction, without a jury, of refusing to report for alternative civilian work under his I–O classification. He has appealed. We affirm.

Gast registered with his local board in October 1966. He later filed a Classification Questionnaire and a Special Conscientious Objector Form (SSS 150) claiming to be spending "much time," "100 hours or more" per month engaged in field work as a Jehovah Witness minister. On April 10, 1967 he was classified I–O by the local board. He thereafter requested a personal appearance before the board, on the ground that he should have been given a IV–D ministerial classification. His file was reopened but he was again classified I–O on June 5, 1967. The appeal board confirmed.

A year later, on June 11, 1968, Gast wrote the local board that he was unwilling to perform civilian work. On July 23, 1968 he submitted a letter in support of his claim to a ministerial exemption. The board, after meeting with Gast, refused a second reopening of his classification. He was ordered to report for hospital work, failed to report, and his indictment and trial followed.

## I.

Gast contends that the grand jury which indicted him did not represent a fair cross section of the community because the selection process was unconstitutional since it excluded as a "cognizable class" "young adults" between the ages of 18 and 26. He argues that young people tend to vote less frequently than their elders, due to such factors as geographic mobility and a greater unfamiliarity with registration procedures. Consequently their names appear with less frequency on the voter lists from which random selections are made for grand jury service. He also argues that the voter lists used in 1969 to select his grand jury failed to include those persons turned 21 since the 1968 "last election."

■ We find no merit in his arguments and think the district court did not err in deciding that the composition of the grand jury was not unconstitutional.[2] The use of voter registration lists (28 U.S.C. § 1863) has been upheld as a permissible means of grand jury selection. United States v. Dangler, 422 F.2d 344 (5th Cir. 1970); United States v. Butera, 420 F.2d 564, 573 (1st Cir. 1970); Camp v. United States, 413 F.2d 419 (5th Cir. 1969); Grimes v. United States, 391 F.2d 709 (5th Cir. 1968); United States v. Kelly, 349 F.2d 720, 778 (2nd Cir. 1965). And there is no requirement that a grand jury be a statistical mirror of the community, United States v. DiTommaso, 405 F.2d 385, 389 (4th Cir. 1968), or that it conform to proportionate strength of each identifiable group in the total population, Simmons v. United States, 406 F.2d 456, 461 (5th Cir. 1969). Furthermore, young people, subject of his argument, who choose not to vote cannot be considered a "cognizable group." See Camp v. United States, 413 F.2d 419, 421 (5th Cir. 1969); Grimes, supra; Kelly, supra. Finally, there is no statutory requirement that the names of those turned 21 since the "last election" in 1968 be added to the voter lists, prior to the participation of those persons in the electoral process.

■ There is no merit either in Gast's contention that 28 U.S.C. § 1865

---

1. Senior Circuit Judge Major, whose death occurred on January 4, 1972, heard oral argument, but did not participate in the adoption of this opinion.

2. 314 F.Supp. 414 (W.D.Wis.1970).

(b) (1) is unconstitutional because it limited grand jury service to persons who are both over 21 years of age and had at least one year's residence in the relevant district. He relies on the Voting Rights Act Amendments of 1970.[3] This Act, so far as pertinent here, abolished the "durational residency requirement,"[4] and prohibited denial of the right to vote "to citizens of the United States eighteen years of age or over."[5]

The amendments effective as of their respective dates[6] are of no aid to Gast, since they operate prospectively only and therefore do not reach his indictment in January 1970. Furthermore, the argument that pre-amended 28 U.S.C. § 1865 (b) (1) is unconstitutional because it limited grand jury service to those over 21 years of age was expressly considered and rejected in United States v. McVean, 436 F.2d 1120, 1122 (5th Cir. 1971); see also United States v. Butera, 420 F.2d 564, 570 n. 15; United States v. Tantash, 409 F.2d 227, 228 (9th Cir. 1969).

## II.

Gast challenges his conviction, asserting that there was no basis in fact either for the original refusal to grant him a IV–D ministerial exemption or for the refusal to reopen his classification after "new evidence" was presented in June and July of 1968.

We think there was a basis in fact for originally denying Gast the IV–D classification, since he did not present a prima facie case. In order to qualify for a ministerial exemption a registrant must establish that teaching and preaching are regularly performed and comprise the registrant's customary vocation. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Phifer, 440 F.2d 462, 464 (7th Cir. 1971); United States v. Isenring, 419 F.2d 975, 979 (7th Cir.

1969). And these "rigid criteria" cannot be met where the teaching or preaching is performed part-time or half-time, occasionally or irregularly. *Isenring* at 979.

Taken as true, the unsupported statements in Gast's file show that he spent approximately "100 hours or more" each month on ministerial duties which he described as teaching and instructing people on the Bible, personal studying, attending congregation meetings, and counselling the spiritually sick. However, other statements showed that Gast also spent approximately 160 hours per month in his "occupation" as a tool and die trainee. We think the above facts established at best that Gast practiced his ministerial work regularly but not extensively enough to constitute it as his customary vocation. He was thus not entitled to the exemption. *Isenring* at 979.

We see no merit either in Gast's claim that in June and July 1968 he presented new facts not previously considered by the board and which entitled him to the exemption, 32 CFR 1625.2; Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). He relies on his June 11, 1968 letter to the board in which he declined to do civilian work under his I–O classification on the ground that it would interfere with his ministerial work. He also relies upon a letter submitted to the board July 23, 1968, written by a Jehovah Witness minister testifying to Gast's services as a minister.

The June 11 letter contained no significant information which the board had not previously considered. And the letter received by the board July 23, 1968 was of marginal impact. It was dated June 20, 1967 and, being outdated by more than a year, added little to support a claim for reopening in July 1968.

3. P.L. 91–285 91st Cong. H.R. 4249 June 22, 1970.

4. Section 202(b) (1) P.L. 91–285. H.R. 4249 June 22, 1970.

5. Section 301(b) P.L. 91–285.

6. The Voting Rights Act Amendments of 1970 became law June 22, 1970. The provisions of Title III, however, were effective only with respect to any primary or election held on or after January 1, 1971. Section 305.

## III.

 Gast next claims that the order of call was improper and vitiates the conviction. Under the pre-lottery order of call sequence, the regulations specified that non-volunteers between ages 19 and 26—subject to qualification—be ordered to report for induction "in the order of their dates of birth, with the oldest being selected first." 32 CFR 1631.7. The regulations also provided that conscientious objectors could not be ordered to report for civilian work prior to the time they would be ordered to report for induction were they classified I–A. 32 CFR 1660.-20. Gast claims that under the above regulations he should have been ordered to report for civilian work June 5, 1968 instead of June 3, 1968.

The district court found that the proper order of call was observed by the board in ordering Gast to report. The finding was based on the presumption of regularity and evidence showing the orders with respect to others whose birth dates substantially coincided with Gast's. The court found the two day discrepancy relied on by Gast "insignificant." We adopt the finding of the court. Gast failed to carry his burden successfully in showing that the order of call was irregular. United States v. Sandbank, 403 F.2d 38, 40 (2nd Cir. 1968). Gast's reliance upon United States v. Smith, 291 F.Supp. 63 (D.N.H.1968), is inapposite. The facts are different, and the court there relied upon United States v. Lybrand, 279 F.Supp. 74, for the rule that the government had the burden to establish regularity. That rule was rejected in United States v. Sandbank, *supra.*

## IV.

Gast claims that "in many respects" the Selective Service Act is unconstitutional. The constitutionality of the Act has been upheld in Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 and United States v. Lyzun, 444 F.2d 1043, 1971 by this court.

 Gast has also failed to persuade us that the state appeal board was im-properly composed in the Western District of Wisconsin because all members lived in Eau Claire. He concedes that there is no specific requirement of geographical distribution. We think the district court properly found no merit in his contention. *See also* United States v. Tobias, 447 F.2d 227, 228 (3rd Cir. 1971).

We have considered other points raised, but deem it unnecessary to discuss them. Suffice to say we find no merit in any of them.

Affirmed.