CHARLES KENNETH HOPKINS *v.*
STATE OF MARYLAND

[No. 247, September Term, 1973.]

*Decided November 26, 1973.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Gary R. Alexander* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Richard Sothoron* and *Kenneth Lore, Assistant State's Attorneys for Prince George's County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Charles Kenneth Hopkins was found guilty by a jury, presided over by Judge Perry G. Bowen, Jr., in the Circuit Court for Calvert County, of murder in the first degree and armed robbery. The evidence of appellant's criminal agency was overwhelming. The State produced testimony from an eye witness and an accomplice that appellant was the "trigger man" who had killed an off-duty park police officer during the course of a robbery of a Seven-eleven store in Prince George's County. In addition, the State showed that the appellant had admitted the shooting to an acquaintance and the appellant's written confession was read into evidence.

In this Court appellant maintains:

> I. "The Lower Court erred in refusing to grant the motions challenging the array of the Grand Jury and Petit Jury based upon systematic and discriminatory exclusions of non-voters and persons between the ages of 18 and 21 years thereby denying the Defendant his constitutional right of trial by jury of his peers."
>
> II. "The Lower Court erred in denying Defendant's Motion to Suppress the confession which was obtained without his consent or understanding while under the influence of narcotics in violation of his constitutional rights."

III. "The Lower Court erred in admitting into evidence medical opinions and conclusions contained in the autopsy report without the presence of an expert witness."

IV. "The Lower Court erred in failing to allow Defense Counsel to pursue and obtain evidence as to what was presented to the Grand Jury after ruling that certain evidence of the State was inadmissible."

V. "The Lower Court erred in denying Defense Counsel access to the Freeman written statement for the purpose of impeachment and use during trial."

I.

In *Wilkins v. State,* 16 Md. App. 587, 300 A. 2d 411 (1973), *aff'd* 270 Md. 62, 310 A. 2d 39 (1973), we were confronted with a constitutional attack on Md. Ann. Code Art. 51 § 3. In that case the thrust of the argument was that citizens of this State, eligible to vote, but unregistered, were excluded from jury duty and the exclusion, Wilkins asserted, was unconstitutional. Intertwined with that contention was the assertion that persons between ages eighteen and twenty-one were also unconstitutionally denied service upon juries. Because Wilkins failed to demonstrate in the trial court "that persons between the ages of 18 and 21 are a 'cognizable' group," we did not reach the constitutionality, *vel non,* of the statutory exclusion of these persons from jury service. We said we would await "the day when this interesting issue may be squarely met and decided." That day has arrived.

In this case the appellant established that the population of Prince George's County [1] — the place of the crime and the indictment — according to the 1970 census, was 660,567 people. Approximately five percent (5%) of those persons, or 37,512 persons, are in the eighteen to twenty-one years age

---

1. The case was removed to Calvert County for trial.

bracket; 241,070 citizens of Prince George's County are registered voters and approximately four percent (4%), or 11,426 persons, fall within the eighteen to twenty-one year old range. Appellant argues that the exclusion of the eighteen to twenty-one year old group from grand and petit juries is discriminatory. He says that the requirements of a "cross section of the citizens of the State" means that no identifiable group in the community may be systematically excluded.

The gist of the appellant's argument is that because eighteen to twenty-one year olds have been constitutionally mandated to be a cognizable group for the purpose of voting, they must be considered to be a cognizable group for the purpose of serving as jurors.

Section 1 of the Twenty-Sixth Amendment to the Constitution of the United States provides:

> "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." [2]

At the time of the indictment in the instant case, Md. Ann. Code Art. 51, § 1, provided:

> "Whenever a litigant in a court of this State is entitled to trial by jury, he shall have the right to a petit jury selected at random from a fair cross section of the citizens of this State resident in the county wherein the court convenes or in Baltimore City if the court convenes therein. Whenever a person is accused of an indictable criminal offense under the laws of this State, he shall have the right to a grand jury selected at random from a fair cross section of the citizens of this State resident in the county wherein the court convenes or in Baltimore City if the court convenes therein. All citizens of

---

2. Md. Ann. Code Art. 33, §§ 3-4 (b) provides that persons eighteen years of age or older, who otherwise meet the requirements of that section, may vote.

this State (1) shall have the opportunity to be considered for service on grand and petit juries in the courts of this State by maintaining their names on the roll of registered voters for State elections, and (2) shall have an obligation to serve as jurors when summoned for that purpose." [3]

Section 2 thereof provides that:

"No citizen shall be excluded from service as a grand or petit juror in the courts of this State on account of race, color, religion, sex, national origin, or economic status."

The then § 3 of the same article stated:

"The names of prospective jurors shall be selected from persons 21 years of age or over whose names appear on the voter registration lists for State elections and from such additional sources as may be prescribed in the plan adopted pursuant to § 4. Volunteers for jury service shall be refused, and recommendations, if made, shall not be accepted." [4]

Before the enactment of Laws of 1969, ch. 408, it was provided in Md. Ann. Code Art. 51, § 3 that no person could serve as a juror until he or she had attained the age of twenty-five years. In *Hunt v. State,* 12 Md. App. 286, 278 A. 2d 637 (1971) we were confronted with a somewhat similar contention to that being raised in the instant appeal. Hunt argued that because he was twenty-one years of age, and jurors were required to be twenty-five years old, he was denied his constitutional right to a trial by a jury of his peers. We said, at 297:

"Assuming that those under 25 years of age were

**3.** This section was amended by Laws of 1973, ch. 840. The amendment eliminated the first "is" in the second sentence and the comma after "State". It also deleted the words "he shall have the right to a grand jury" and substituted therefore the phrase "is presented to a grand jury, such grand jury shall be".
**4.** This section was amended by Laws of 1973, ch. 651, § 25. The amendment substitutes "18" for "21".

eliminated from the jury in Hunt's trial we see no constitutional infirmity. There is nothing unreasonable in requiring a juror to be at least 25 years old. There must be some cut-off point and Hunt does not explain, nor do we see, why equal protection is denied at a 25 years of age cut-off but afforded, as he seems to suggest, at a 21 years of age cut-off. *See Britton v. Bullen,* 275 F. Supp. 756 (4th Cir.)."

Appellant employs the cliche "old enough to fight, old enough to vote" and welds thereto the expletive "old enough to serve as jurors." He points to the fact that the General Assembly in its 1973 session amended Md. Ann. Code Art. 51, § 6(b)(viii) so that effective July 1, 1973, persons eighteen to twenty-one years of age, and who were otherwise eligible, could serve as members of juries. *See* Laws of 1973, ch. 651, § 25. Irrespective of the current statutory proviso, there is no constitutional requirement that persons eighteen to twenty-one years old must serve on juries.

In *United States v. Guzman,* 337 F. Supp. 140 (S.D.N.Y. 1972), *aff'd* 468 F. 2d 1245 (2d Cir. 1972), a contention identical to that raised in this case was before the United States District Court. We are persuaded by the reasoning of Judge Metzner in *Guzman* and we adopt it. The judge said, at 144:

"There is simply no justification for defendant's claim that merely because 18-to-21- year-olds have been given the right to vote, the Constitution compels that they be given the right to serve on juries. The right to vote and the right to sit in judgment of others have certain fundamental differences which cannot be overlooked. The act of voting is a personal expression of favor or disfavor for particular policies, personalities, or laws. . . .

However, when one sits on a jury, he is required to accept and apply the law as the judge gives it to him,[5] whether or not he agrees with it and no

5. Of course, in Maryland jurors in criminal cases are the judges of both

matter what his personal feelings are toward the parties in question. He must have the maturity and understanding to do what may often be an unpleasant task."

The weight of authority has concluded that eighteen to twenty-one year-olds have no constitutional right to serve on juries. *See inter alia: United States v. Olson,* 473 F. 2d 686 (8th Cir. 1973), *cert. denied,* 412 U. S. 905, 93 S. Ct. 2291, 36 L. Ed. 2d 970 (1973); *United States v. Ross,* 468 F. 2d 1213 (9th Cir. 1972); *United States v. Gast,* 457 F. 2d 141 (7th Cir. 1972), *cert. denied,* 406 U. S. 969, 92 S. Ct. 2426, 32 L. Ed. 2d 668 (1972); *United States v. Allen,* 445 F. 2d 849 (5th Cir. 1971); *United States v. McVean,* 436 F. 2d 1120 (5th Cir. 1971), *cert. denied,* 404 U. S. 822, 92 S. Ct. 45, 30 L. Ed. 2d 50 (1971), *rehearing denied,* 404 U. S. 952, 92 S. Ct. 277, 30 L. Ed. 2d 269 (1971); *United States v. Tantash,* 409 F. 2d 227 (9th Cir. 1969), *cert. denied,* 395 U. S. 968, 89 S. Ct. 2115, 23 L. Ed. 2d 754 (1969); *George v. United States,* 196 F. 2d 445 (9th Cir. 1952), *cert. denied,* 344 U. S. 843, 73 S. Ct. 58, 97 L. Ed. 656 (1952); *Deppe v. Board of Jury Supervisors of St. Louis County, Mo.,* 351 F. Supp. 965 (E.D. Mo. 1972); *United States v. Belgrave,* 351 F. Supp. 686 (E.D. Pa. 1972); *United States v. Deardorff,* 343 F. Supp. 1033 (S.D.N.Y. 1971); *United States v. Waddy,* 340 F. Supp. 509 (S.D.N.Y. 1971); *United States v. Guzman, supra; United States v. Gargan,* 314 F. Supp. 414 (W.D. Wis. 1970) *aff'd sub nom. United States v. Gast,* 457 F. 2d 141 (7th Cir. 1972), *cert. denied,* 406 U. S. 969, 92 S. Ct. 2426, 32 L. Ed. 2d 668 (1972).

There is also another reason why we reject the appellant's argument. In order for a group to be "cognizable" it must be shown that the particular group has a definite composition and that membership does not shift from day to day.[6] The group must have cohesion. "There must be a common thread

---

the law and the fact and the judge may give only advisory instructions. This does not mean, however, that a jury is free to enact new law, repeal or ignore clearly existing law at whim, fancy, compassion, malevolence or visceral reasons even when limited to the confines of a single, particular, criminal case. Hamilton v. State, 12 Md. App. 91, 277 A. 2d 460 (1971), *aff'd,* 265 Md. 256, 288 A. 2d 885 (1972).

**6.** *E.g.,* a cognizable group of the same sex, race or religion.

which runs though the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process." *United States v. Guzman, supra* at 143; *Wilkins v. State, supra* at 595. Moreover, the possibility must exist that the exclusion of the group from jury service will result in bias, partiality or prejudice being practiced against members of the group by juries hearing cases in which members of the group are involved. *United States v. Guzman, supra* at 143-146; *United States v. Greenberg,* 200 F. Supp. 382, 391 (S.D.N.Y. 1961). The evidence in the instant case fails to establish that the attitudes, experiences, views and objectives of persons in the eighteen to twenty-one years of age group differ to any material extent or degree from those twenty-one years of age or a few years older. Furthermore, the appellant did not demonstrate that the rights of persons eighteen to twenty-one years old were inadequately represented or safeguarded by persons who were at that time eligible to serve as jurors.[7]

## II.

When the police went to the appellant's residence in order to make the arrest, they were advised that appellant was in his room. They requested admission to the room, but several minutes elapsed before appellant opened the door and the officers entered. At that time a bottle cap used as a "hot cooker" was found and the arresting officer burned his fingers on the "cooker". During the pre-trial hearing on the motion to suppress, the appellant testified that he had a forty dollar ($40.00) a day heroin habit and that he had injected himself immediately prior to his arrest. Appellant further testified that he was falsely informed by Lieutenant Fitzpatrick that an accomplice in the robbery-murder had already confessed and implicated the appellant. In essence the appellant's testimony at the pre-trial hearing was that he had been tricked by the police and that because he was

---

7. As we have previously noted, at the time of trial jurors were required to be twenty-one years of age or older.

under the influence of narcotics, his will was overborne by the trickery. Countering the appellant's testimony was that of Lieutenant Fitzpatrick who stated that he gave to appellant the warnings required by *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The appellant then made an oral confession. Subsequently the *Miranda* warnings were repeated, and the appellant gave a written confession. The lieutenant admitted that he had led the appellant to believe that the State had more evidence against him than it actually had. Judge Bowen found that, while the appellant had injected himself with heroin prior to the arrest and that he may have been frightened at the time he made the confession, that the appellant was nevertheless fully cognizant of his rights under *Miranda* and that his will was not overborne by the arresting officer.

A confession is not inadmissible as evidence merely because the accused is under the influence of a narcotic drug, although the condition of the accused is a factor to be considered. 3 *Wharton's Criminal Evidence* § 689 (13th. ed. 1973). Moreover, the Court of Appeals in *Bryant v. State*, 229 Md. 531, 185 A. 2d 190 (1962) held, at 536, that:

". . . [T]here is persuasive authority in other jurisdictions, if not in Maryland (*Bell v. United States*, 47 F. 2d 438; *Lindsey v. State* (Fla.), 63 So. 832; *State v. Grear* (Minn.), 10 N. W. 472; *Ray v. State* (Ala.), 97 So. 2d 594; *Eiffe v. State* (Ind.), 77 N.E.2d 750; *People v. Townsend* (Ill.), 141 N.E.2d 729, *cert. den.* 355 U. S. 850, [78 S. Ct. 76,] 2 L. Ed. 2d 60, [*rehearing denied,*] 355 U. S. 886, [78 S. Ct. 152, 2] L. Ed. 2d 116 [(1957)] that confessions made while under the influence of self-administered narcotics may be admitted in evidence against the accused . . . ."

It is pellucid that at the hearing on the motion to suppress the confession, Judge Bowen was confronted with two conflicting versions of what had transpired immediately prior to and at the time of the confession. The judge chose to believe the State and not the appellant. Our constitutionally

mandated, independent, reflective appraisal of the entire record fails to convince us that Judge Bowen was wrong. *Davis v. North Carolina*, 384 U. S. 737, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966); *Layman v. State*, 14 Md. App. 215, 286 A. 2d 559 (1972); *Walker v. State*, 12 Md. App. 684, 280 A. 2d 260 (1971); *Gardner v. State*, 10 Md. App. 233, 269 A. 2d 186 (1970).

If a police officer informs an accused that an accomplice has made a confession in which he has implicated the accused and the officer's statement is untrue, the mere fact that the accused was motivated to make an inculpatory statement in reliance upon the officer's deceit does not render the accused's statement inadmissible or involuntary. *See Frazier v. Cupp*, 394 U. S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969) wherein the Supreme Court held a confession admissible notwithstanding the fact that the police had told an accused that his associate had confessed, and the police statement to the accused was false.

Appellant reads *Escobedo v. Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), to hold that force and trickery may not be used to obtain confessions, but appellant misreads the case. The primary holding of *Escobedo* is that once the police investigation has focused upon the accused, the refusal to honor the accused's request to consult with his attorney constitutes denial of the accused's rights to assistance of counsel under the Sixth and Fourteenth Amendments. *See also Miranda v. Arizona, supra.* While *Escobedo* and a host of other cases [8] proscribe the use of force to obtain a confession, there is nothing in the Court's opinion that bans the use of deceit as a valid weapon of the police arsenal. *See Frazier v. Cupp, supra.* We hold that the use of trickery by the misrepresentation to the accused of the evidence that the police possessed is, under the circumstances of this case, within the ambit of the "other proper investigative efforts" recognized by *Escobedo*. [9]

8. *See, e.g.,* Brown v. Mississippi, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682 (1936); Jackson v. State, 209 Md. 390, 121 A. 2d 242 (1956); Driver v. State, 201 Md. 25, 92 A. 2d 570 (1952); James v. State, 193 Md. 31, 65 A. 2d 888 (1949); Wright v. State, 177 Md. 230, 9 A. 2d 253 (1939); Dennis v. Warden, 6 Md. App. 295, 251 A. 2d 909 (1969).

9. *See* 3 *Wharton's Criminal Evidence* § 685 (13th. ed. 1973).

## III.

During the course of the trial, the State and the appellant entered into a stipulation as to certain portions of the medical records pertaining to the deceased. That part of the medical record so stipulated to show that on December 23, 1971 the victim of the shooting by appellant was admitted to Cafritz Memorial Hospital. He was operated on, and his condition remained critical until he expired on February 15, 1972. Ms. Mildred Holiday, the custodian of records in the office of the medical examiner in Washington, D.C., was called as a witness by the State. She testified that she was responsible for the autopsy records and that she had made a "Xerox copy" of the original autopsy report. Ms. Holiday said that a Dr. William J. Browning had performed the autopsy. She further testified that she and the chief medical examiner, a Dr. Luke, were the only persons who had access to those reports and that no one else could read the report without the approval of the family and Dr. Luke. Appellant objected to the admission of the autopsy report on the ground that the pathologist, Dr. Browning, was not present to be cross-examined on his findings. Judge Bowen overruled the objection and admitted the report under the "shop book" theory. The thrust of the appellant's attack upon the admission of the autopsy report is that it is not clear that the doctor who performed the autopsy is qualified to make the conclusions contained in the report. Even if we assume that the report was not admissible, its admission would be, at most, under the circumstances, harmless error. The testimony was crystal clear that the deceased was shot by the appellant who walked up behind the decedent, placed his gun against the victim's head and fired it. Those portions of the medical records entered into evidence by stipulation demonstrate that the deceased was admitted to the hospital for a gun shot wound of the head. His condition remained critical, and he expired six weeks after the shooting. This evidence, coupled with the confession of the accused, would certainly lead the jury to conclude that death was caused by a gun shot wound to the head of the decedent.

## IV.

Byron H. Freeman, the witness to whom the appellant had allegedly admitted the murder, was used by the police to obtain evidence against the appellant through the means of electronic interception of conversations with the appellant. No prior court order authorizing the electronic interception had been obtained and, as a result, the hearing judge suppressed the tapes. *See* 18 U.S.C. §§ 2510-20 (Omnibus Crime Control and Safe Streets Act of 1968); Md. Ann. Code Art. 35, §§ 92-99; Md. Ann. Code Art. 27, §§ 125 A-D. *See also Pennington v. State,* 19 Md. App. 253, 310 A. 2d 817 (1973); *Washburn v. State,* 19 Md. App. 187, 310 A. 2d 176 (1973); *State v. Siegel,* 13 Md. App. 444, 285 A. 2d 671 (1971), *aff'd* 266 Md. 256, 292 A. 2d 86 (1972).

Appellant argues that he was entitled to the grand jury's records in order that he might show that the illegal tapes were made known to the grand jury and "might have tainted the grand jury's indictment." Detective Donnally stated at the pretrial hearing that he did not "remember" mentioning the tapes before the grand jury. Even if the grand jury had been informed of the illegal tapes, the hearing judge would still have been correct in refusing to furnish the grand jury minutes to the accused. The grand jury is an inquisitional and accusatory body. It does not determine the guilt or innocence of the accused as that decision is vested in the petit jury or court, if there be a non-jury trial. That an indictment is founded on tainted evidence is no ground for dismissal as ". . . [N]ormally, there is no limitation on the character of evidence that may be presented to a grand jury . . . ." *Gelbard v. United States,* 408 U. S. 41, 60, 92 S. Ct. 2357, 2367, 33 L. Ed. 2d 179, 193 (1972); *United States v. Blue,* 384 U. S. 251, 86 S. Ct. 1416, 16 L. Ed. 2d 510 (1966). The rules of evidence are not applicable to grand jury proceedings. Of course, a competent and conscientious prosecutor would be most reluctant to seek an indictment based wholly on tainted evidence knowing that such evidence could not be used at trial.

## V.

At the hearing on the motion to suppress the evidence, the appellant sought to obtain permission for a pretrial examination of the statement of Byron H. Freeman which statement had been made to the police during their investigation. Appellant asserts that he should have had access to the statement in order that he could use it as a basis of impeachment of Freeman's trial testimony. Maryland Rule 728 provides that a defendant is entitled, upon a showing that the items sought are material to his defense, to obtain from the State:

"1. Objects From Defendant or by Process.

To produce and permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects obtained from or belonging to the defendant or obtained from others by seizure or by process.

2. Defendant's Statements.

To furnish the defendant the substance of any oral statement made by him which the State proposes to produce as evidence to prove its case in chief, a copy of any written statement made by him, and the substance of any oral confession made by him.

3. Names of Witnesses.

To furnish the defendant a list of the names and addresses of the witnesses whom the State intends to call to prove its case in chief."

The rule does not provide that the State must furnish to a defendant statements of witnesses. *Bailey v. State,* 16 Md. App. 83, 294 A. 2d 123 (1972); *Cummings v. State,* 7 Md. App. 687, 256 A. 2d 894 (1969); *Presley v. State,* 6 Md. App. 419, 251 A. 2d 622 (1969). The appellant knew that Freeman had given a statement to the police. An interview of Freeman by appellant's counsel might have revealed the substance of that statement. In any event, under Rule 728 the accused is not entitled to a pretrial copy or viewing of a statement made by a witness to the State.

The State may not, however, suppress or withhold

"material evidence exculpatory to an accused" because such an act would constitute a denial of due process. *Brady v. State,* 226 Md. 422, 174 A. 2d 167 (1961); *aff'd* 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *Moore v. Illinois,* 408 U. S. 786, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972), *rehearing denied,* 409 U. S. 897, 93 S. Ct. 87, 34 L. Ed. 2d 155 (1972); *Powell v. State,* 16 Md. App. 685, 299 A. 2d 454 (1973); *Johnson v. Warden,* 16 Md. App. 227, 295 A. 2d 820 (1972). Our perusal of the record discloses that no demand was made at trial, following Freeman's direct testimony, for a copy of his written statement so that it could be reviewed for the purposes of cross-examination or impeachment. Consequently, the question of the accused's right to the statement at that time is not before us and we need not, and do not, decide it.

Freeman's written statement was, however, made a part of the record. We have reviewed it and have compared it with his oral testimony. Although appellant's counsel perceives "numerous discrepancies between that statement and the testimony of Mr. Freeman at the time of trial", we do not. On the contrary, we agree with the observation of the Assistant Attorney General that the discrepancies, which were minor in nature, "could be attributed to the failure of human memory as the statement was given on March 8, 1972 and Freeman testified on February 26, 1973."

*Judgments affirmed.*