## WILLIE LEE JONES, JR. *v.* STATE OF MARYLAND

[No. 199, September Term, 1977.]

*Decided December 13, 1977.*

The cause was submitted on briefs to GILBERT, C. J., and MORTON and COUCH, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Martha G. Villmoare, Assistant Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Kathleen M. Sweeney, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Robert Bonsib* and *Michael Whalen, Assistant State's Attorneys for Prince George's County,* for appellee.

COUCH, J., delivered the opinion of the Court.

Willie Lee Jones, Jr., appellant, was found guilty of three counts of first degree murder, four counts of kidnapping, and four counts of use of a handgun in a crime of violence, following a jury trial in the Circuit Court for Prince George's County (Levin, J. presiding). He was sentenced to three consecutive life sentences for the murder convictions, and other consecutive sentences totaling 180 years for the kidnapping and handgun convictions. He appeals from those judgments.

Appellant submits five questions for our review as follows:

"1. Did admission of Appellant's inculpatory statements violate the Sixth Amendment?

A. Were the statements improperly admitted because they were taken without counsel present after counsel had been retained and there was no showing of a valid waiver of the right to counsel?

B. Were the statements improperly admitted because they resulted from ineffective representation by counsel?

2. Did admission of Appellant's inculpatory statement violate the Fifth Amendment because the State did not show by a preponderance of the evidence that the statement was voluntary?

3. Were statements of one of the homicide victims properly admitted as dying declarations?

4. Did the trial judge improperly refuse an instruction of Appellant's Sixth Amendment rights?

5. Did Appellant's kidnapping convictions violate the prohibition against double jeopardy?"

Inasmuch as the factual background for this appeal was so recently set forth by Judge Moylan, speaking for this Court, in *Roland Neville Godwin v. State of Maryland*, (No. 200, September Term, 1977, filed November 14, 1977), we will not again set forth the facts except to supply them, where necessary, as we address the various questions.

I

## SIXTH AMENDMENT VIOLATIONS

### A.

## STATEMENT ADMITTED WITHOUT A SHOWING OF VALID WAIVER OF RIGHT OF COUNSEL

Appellant argues that his Sixth Amendment right to have the assistance of counsel for his defense was violated in that there was no showing of a valid waiver to have his counsel

present at his interrogation by the police although counsel had been retained.

It is axiomatic that appellant did have the right to the assistance of counsel under the Sixth Amendment, and that this right extended to the interrogation posture of the case. However, it is equally axiomatic that this right, like any other constitutional right, may be waived, *Sabatini v. State,* 14 Md. App. 431, 287 A. 2d 511 (1972), providing such waiver is freely, voluntarily, and intelligently made. Further, it is clear that any such waiver must be affirmatively shown on the record and cannot be presumed from a silent record. *Anderson v. State,* 6 Md. App. 688, 253 A. 2d 387 (1969).

Appellant's argument is two-pronged; first, he contends deceit was practiced upon him by Prince George's County police officers rendering his statement involuntary; second, he was continually questioned despite his requests to talk to his attorney (he did, in private) which evidenced his "consistent reliance" upon the advice of counsel, thereby refuting any suggestion that he had relinquished his Sixth Amendment rights.

Turning first to appellant's argument that waiver is not possible in a "deceit situation", the record reveals that appellant first turned himself in to Washington, D. C. authorities upon the advice of counsel, that he was given his "rights" and signed a waiver form. His attorney was present in the interrogation room when he gave this statement and reviewed the statement when it was reduced to writing.

The following day, appellant was transported to Prince George's County where he was interviewed by Detective Tucker; his attorney was not present at that interview. Tucker advised appellant of his rights and had him sign a waiver form. The record discloses that during the initial 2½ hour interview, Corporal Hall questioned appellant for about 45 minutes. Hall stated that he took appellant's shoes and left the room with them in order to make appellant believe that his shoe prints had been identified at the scene of the crime. When Hall returned to the room he told appellant his shoes appeared to match the prints at the scene, although Hall admitted this was untrue.

After approximately 2½ hours of interrogation, appellant asked to talk to his attorney and was allowed to contact his attorney on the telephone. Appellant talked privately with his attorney for some fifteen minutes, following which the attorney talked to Detective Tucker at the attorney's request. During their telephone conversation, Tucker told the attorney that the police did not believe appellant was telling the truth and that Tucker wanted to take an additional statement from appellant.

Following the phone conversation, Tucker resumed the interview with appellant and asked him what his attorney had told him. Appellant replied that "he told me to tell the truth". Tucker then told appellant to tell the truth. Appellant proceeded to give an oral statement, which later was reduced to writing. It was also shown that appellant acknowledged in writing, before giving the typed statement following the oral statement to Tucker, that he had talked to his attorney, was given his constitutional rights, and that he wished to give Tucker an additional statement.

It is clear that the deceit complained about involves only the handling of appellant's shoes, and Hall's subsequent statement. We are not persuaded that appellant's contention that the deceit rendered the statement involuntary can be sustained. In *Hopkins v. State,* 19 Md. App. 414, 424, 311 A. 2d 483, 489 (1973), this Court stated:

> "[T]he mere fact that the accused was motivated to make an inculpatory statement in reliance upon the officer's deceit does not render the accused's statement inadmissible or involuntary."

In *Hopkins, supra,* a police officer informed an accused that an accomplice had made a confession in which he implicated the accused, which was in fact untrue. The Court went on to say:

> "While *Escobedo* and a host of other cases proscribe the use of force to obtain a confession, there is nothing in the Court's opinion that bans the use of deceit as a valid weapon of the police arsenal."

*Id.* at 311 A. 2d 489.

We note here that the claimed deceit in this case only resulted in appellant asking to contact his attorney and could not be viewed as a threat or coercion so as to make the statement involuntary. Accordingly, we see no reason to retreat from our position taken in *Hopkins.*

Appellant next attacks the voluntariness of his statements because his "consistent reliance" upon the advice of counsel refutes any suggestion that he had relinquished his Sixth Amendment right to counsel. He argues that the Supreme Court, in *Brewer v. Williams,* 430 U. S. 387, 97 S. Ct. 1232, 51 L.Ed.2d 424 (1977) stated, "Waiver requires not merely comprehension but relinquishment, and Williams' consistent reliance on the advice of counsel in dealing with the authorities refutes any suggestion that he waived that right". Appellant correctly cites *Brewer* for this limited proposition. However, appellant's reliance on *Brewer* under the facts of this case is misplaced, because the Court there also pointed out:

> "The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not,* without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not."

*Id.* at 405-406, 97 S. Ct. at 1243, 51 L.Ed.2d at 441.

Reliance on *State v. Fowler,* 259 Md. 95, 267 A. 2d 228 (1970) to support appellant's contention on this issue is likewise misplaced. In *Fowler,* the defendant had been given his *Miranda* warnings several times, although the record was silent as to his response each time he received the warnings. Fowler also interrupted his interrogation to call his brother to see if he had gotten an attorney for him; the police knew this and continued with the interrogation because "he didn't stress that he wanted an attorney". There were other factors present in *Fowler* that are not present in the case *sub judice.* It is clear from the record here that *Fowler* does not dictate that appellant in this case did not validly waive his Sixth Amendment rights.

Thus we conclude that if the record does affirmatively show a waiver of appellant's right to have counsel in this case, then any attack on the admissibility of any statement given thereafter must fail. So far as this particular issue is concerned, we keep in mind we are only dealing with the statement given to Detective Tucker at the Prince George's County Bureau of Criminal Investigation Office in Forestville which was taken without appellant's counsel being present. The record clearly shows that a written waiver was obtained from appellant before any interrogation was begun at that location. Further, the record discloses that after appellant and Tucker talked to appellant's counsel, appellant agreed to tell the truth, gave an oral statement, and then allowed this to be reduced to writing in which he acknowledged he had talked to his attorney and was given his "constitutional rights".

We hold that under the circumstances of this case, as revealed by the record, appellant voluntarily and knowingly waived his right for counsel to be present, and thus there was no error by the trial court in refusing to suppress the statements on these grounds.

B.

## WERE THE STATEMENTS IMPROPERLY ADMITTED BECAUSE THEY RESULTED FROM INEF-FECTIVE ASSISTANCE OF COUNSEL

Appellant argues that since he had a constitutional right to the assistance of counsel, it necessarily follows that he was entitled to the effective assistance of counsel. *McMann v. Richardson,* 397 U. S. 759, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Renshaw,* 276 Md. 259, 347 A. 2d 219 (1975). He further argues that he was guaranteed effective assistance, among other things, in protecting himself against self-incrimination. Since his counsel advised him to tell the truth, and was not present when appellant gave his statement to Detective Tucker, appellant contends this amounted to ineffective assistance of counsel. Also, appellant maintains the police should have recognized it as such and not capital-ized on such inadequate representation in securing the con-

fession. He thus argues that his confession should have been suppressed.

It must be observed that the factual basis supporting appellant's contention is limited to counsel allowing appellant to give a statement to the District of Columbia police authorities in his presence; in allowing appellant to give a statement to Prince George's County Police authorities in his absence, but after a fifteen minute telephone conversation with appellant and counsel; and in telling appellant to tell the truth.

There is no doubt that appellant was entitled to the effective assistance of counsel. *McMann v. Richardson, supra; State v. Renshaw, supra.* However, we conclude this evidence forms little basis upon which to find that this advice and action demonstrated incompetence on the part of counsel. Appellant's counsel at the time was not called as a witness, and the record, therefore, does not disclose the basis upon which he gave his advice, so we cannot say that such advice was incompetent per se. *See People v. Wong,* 35 Cal. App. 3d 812, 111 Cal. Rptr. 314 (1974), for a strikingly similar case in which the same conclusion was reached. There may have been many reasons why the attorney gave the advice he did, but none was apparent from the record, and we think it clear that the point cannot be decided on this appeal, but may be raised in a petition for post conviction relief. *Evans v. State,* 236 Md. 532, 204 A. 2d 554 (1964).

II

DID ADMISSION OF APPELLANT'S INCULPATORY
STATEMENT VIOLATE THE FIFTH AMENDMENT
BECAUSE THE STATE DID NOT SHOW BY
A PREPONDERANCE OF THE EVI-
DENCE THAT THE STATEMENT
WAS VOLUNTARY

Appellant contends that his statement given to Detective Tucker was involuntary because of:

1) the absence of a valid waiver of his *Miranda* rights, and

2) the presence of coercive elements during the interrogation.

What we have previously said in our discussion of appellant's contention is adopted here in answer to this contention. We find no merit with respect to the lack of proof of a valid waiver of counsel, nor to appellant's argument that his statement was involuntary because it was coerced. Nor do we find, under the facts of this case, any necessity for the police to have given appellant his *Miranda* warnings again after Detective Hall's false statement and appellant's telephone conversation with his attorney. We do observe, however, that at this point appellant did execute a form of waiver [1] and we are satisfied that he did so fully aware of his rights. We see nothing here that brings the case within *Brown v. State,* 6 Md. App. 564, 252 A. 2d 272 (1969), although we agree with our predecessors in *Brown* when they said:

> "We quite agree with the cases which hold that the *Miranda* warnings need not be given anew nor the *Miranda* waiver expressed each time the officers question an accused." *Id.* at 569.

We conclude that the record clearly shows this statement to have been given voluntarily, in the constitutional sense, and there was no error in denying appellant's motion to suppress.

## III

## WERE STATEMENTS OF ONE OF THE HOMICIDE VICTIMS PROPERLY ADMITTED AS DYING DECLARATIONS

The trial court admitted, over objection of defense counsel, two statements made by one of the victims, William (Tony)

---

1. Jones' statement to Detective Tucker, October 29, 1975, State's Exhibit Number 22, includes:

"Question: All right. Is it correct that after having talked with your attorney on the telephone and having been advised of your Constitutional rights you now wish to give me an additional statement concerning the triple homicide which occurred 10-24-75 on Deputy Lane, Seat Pleasant, Maryland?

"Answer: Yes. * * *"

Cunningham. The appellant claims that the trial court erred in admitting these statements because they do not meet the established criteria required for the dying declarations exception to the hearsay rule.

The specific criteria that appellant contends these statements do not meet is the requirement that the declarant be conscious that death was near and certain. *Connor v. State,* 225 Md. 543, 171 A. 2d 699 (1960); *Chandler v. State,* 7 Md. App. 646, 256 A. 2d 695 (1969). It is clear from the authorities that a sense or mere belief of impending death is not sufficient to constitute the statement a dying declaration; the declarant must have abandoned all hope of recovery. 2 Torcia, Wharton's *Criminal Evidence* § 321 (13th ed.) cited with approval in *Connor);* McCormick, *Evidence* § 680 (2d ed.) (cited by *Connor);* 5 Wigmore, *Evidence* § 1440 (3d ed.) (cited with approval in *Connor); Hawkins v. State,* 98 Md. 355, 57 A. 27 (1904).

The authorities also agree that the belief of impending death need not be expressed by the declarant, but may be inferred from the circumstances, such as the fatal quality of the wound or from statements made to the declarant by a doctor or others. *Connor v. State, supra.*

After reviewing both statements and the relevant accompanying circumstances, we are unable to conclude that the declarant, Cunningham, at the time of the first statement at issue, was certain that he would die, and had abandoned all hope of recovery. Therefore, we think that the trial court erred in admitting this statement. We now explain why.

The first statement was made by Cunningham, at the scene of the homicide a short time after the shootings, to Officer Linger of the Prince George's County Police. At the trial the officer recounted the statement and surrounding circumstances. Officer Linger testified that when he arrived at the scene, Cunningham was lying face up, partially in a small creek. Linger helped move Cunningham onto the bank of the stream, and observed that the victim had been wounded by a shotgun blast to the side. Although Cunningham was in

pain and groaning, his speech was "understandable". Linger testified to the following conversation:

> "Cunningham: Is it bad?
> Linger: It doesn't look good. I am no doctor, hang on, an ambulance is on the way. Who shot you?
> Cunningham: James Person.
> Linger: Anybody else?
> Cunningham: Junior Jones."

While the nature of the wound was extremely serious and, standing alone, might allow an inference that Cunningham had abandoned all hope of recovery, the expressions of Cunningham and Officer Linger indicate that this was not the case. Declarant indicated initially that he did not know how bad his wound actually was. Such a question, standing alone, negates any inference drawn solely from the seriousness of the wound itself. Additionally, Officer Linger held out hope to Cunningham by telling him to hold on until the ambulance and medical help arrived. Given those circumstances, the statement simply does not meet the necessary criteria so as to constitute a valid dying declaration, and it should have been excluded as hearsay.

The second "dying declaration" was made by Cunningham to Officer Bethel at the emergency room of Prince George's General Hospital. Officer Bethel testified at trial that:

> "As they were wheeling the victim into a room, an emergency room, he noticed the hospital personnel and he was pleading for assistance because he was dying. At that time I asked him who had shot him. He replied Junior Jones, sawed-off shotgun, and James Person."

Also relevant to the circumstances concerning this statement are the conversations that Cunningham had with Officer Bethel while being transported to the hospital. Bethel testified:

> "I asked him if he knew he was going to die. He

replied yes, I know I am going to die. Please get me
to the hospital."

\* \* \*

"He pleaded with the medical personnel to please
help him, he was dying."

Officer Bethel considered that the statement made at the
hospital was a "resumption" of the ambulance conversations.

We conclude that Cunningham was certain that death was
impending; that he had abandoned all hope of recovery.
Cunningham did expressly state that he knew he was dying.
Each time, according to Officer Bethel, these expressions of
impending death were followed by requests for medical
assistance, which indicated hope for amelioration of pain but
not a hope of recovery.

In *Hawkins v. State, supra,* the Court of Appeals held that
certain dying declarations met the requirement of
abandonment of hope of recovery, despite one statement to
the effect, "Do get me help; if you don't send for the doctor
I will die." That statement, however, was constantly preceded
and followed by statements that the declarant knew she was
going to die. In addition, those constant expressions were
bolstered by the declarant's mother who testified that "she
could see death in her eyes."

It is evident from the circumstances that Cunningham had
abandoned all hope of recovery, and the second statement
does qualify as a dying declaration and was properly
admissible.

Even though we have found that the trial court erred in
admitting the first statement made by Cunningham, we find
the error to be harmless in light of all the properly admitted
evidence in this case. Upon our own independent review of the
record, we find, beyond a reasonable doubt, that the trial
court's error in admitting this statement did not influence the
verdict. *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976);
*Ross v. State,* 276 Md. 664, 350 A. 2d 680 (1976); *Saunders v.
State,* 28 Md. App. 455, 346 A. 2d 448 (1975). The record
reveals Swain's testimony which placed the appellant at the

scene and as a participant in the kidnapping, which is enough by itself to warrant conviction. In addition, the appellant's own corroborated confession totally inculpates him in the murders. In light of the overwhelming evidence present in the record, we have no difficulty in declaring our belief that the error was harmless beyond a reasonable doubt.

## IV

## DID THE TRIAL JÚDGE IMPROPERLY REFUSE AN INSTRUCTION ON APPELLANT'S SIXTH AMENDMENT RIGHTS

This contention is bottomed on appellant's request to the court to instruct the jury further, after its initial instructions, with specific regard to appellant's Sixth Amendment rights. The record reveals the court had previously given the following instructions:

> "Evidence has been produced here that the defendant has confessed that he has committed the crime or crimes with which he is charged. You are instructed that you are to disregard it, these alleged confessions, in your evaluation of the evidence against the defendant unless you are satisfied beyond a reasonable doubt that the defendant was clearly advised of each of his rights before making the confession, that while he was in custody and while he was undergoing interrogation the defendant must have been specifically advised of his rights as follows:
>
> That he had a right to remain silent. That anything he said could be used against him in a court of law. *That he had the right of presence of an attorney during any questioning. And lastly, that if he could not afford an attorney that one would be appointed for him prior to any questioning if he so desired.*
>
> And the burden is on the State to prove to your satisfaction beyond a reasonable doubt that these confession or confessions that have been admitted

into evidence were reasonably and freely and voluntarily made by Mr. Jones.

*You must weigh in your deliberations any circumstances of pressure against the power of Mr. Jones to resist.* A voluntary confession is defined as one which under all the circumstances is the product of a free and unconstrained will which has not been overborne or compelled.

If you find that the evidence shows beyond a reasonable doubt that the confession was freely and voluntarily made by the defendant, then you are to consider this confession or confessions along with all the other evidence that has been presented in this case in arriving at a verdict.

You are instructed that a valid confession alone is not sufficient evidence upon which to convict anyone. You must find that the defendant's confession has been corroborated by independent evidence to establish that a crime has been committed and this evidence need not establish by itself that a crime has been committed beyond a reasonable doubt, but need only to fortify the truth of the confession.

You must make a determination, if you find that the confession was voluntarily made, you must rule on that like all the other evidence in this case and just put it along with all the other evidence to satisfy yourselves beyond a reasonable doubt that Mr. Jones is either gulity or innocent of the crime or crimes with which he is charged."

Defense counsel made the following additional request:

"In addition to that, in dealing with the confession, the Court only told them that they are to be concerned with whether — he should be concerned, remain silent, the Court has not told them about effective representation of counsel nor indeed has

the Court told them that when the police know that an individual has an attorney, that that attorney should be present, and I ask that the Court supplement it — the Court having given those instructions, that the Court supplement it with the specific instruction that if the police knew that the man was represented by an attorney and they proceeded to interrogate without that attorney present, that they must take that into consideration."

While the record is silent as to the court's ruling on this point, it is clear that in giving additional instructions the court did not include this request. The question we must answer then, is, should the trial judge have so instructed.

By rule (Md. Rule 756 (b) [2]) and case law it is the duty of the trial judge in a criminal case to give an advisory instruction, on request, on every essential point of law supported by the evidence. Notwithstanding that rule, it is clear that a specific request may be denied, if the instructions *as a whole* adequately cover the points of law raised. *Id.; Harris v. State,* 11 Md. App. 658, 276 A. 2d 406 (1971). The record is clear in the instant case that the instructions as given by the trial judge did adequately embrace the requested instruction even though not in the precise language of the request. We perceive no error.

## V

## DID APPELLANT'S KIDNAPPING CONVICTIONS VIOLATE THE PROHIBITION AGAINST DOUBLE JEOPARDY

Finally, appellant argues that under the rationale of *Newton v. State,* 280 Md. 260, 373 A. 2d 262 (1977), his convictions for kidnapping must be merged with his murder

---

2. Now Rule 757 b.

convictions. The State contends that merger is not required because there was evidence from which the jury could have found appellant guilty of murder, independent of the kidnapping, i.e., there was evidence from which the jury could have found "wilfulness, premeditation, and deliberation".

This Court was confronted with the identical issue in *Godwin v. State, supra,* where Judge Moylan, speaking for the Court, said:

> "The appellant's final contention is that since the conviction for murder in the first degree might have rested upon Article 27, § 410, providing, *inter alia,* that all murder committed in the perpetration of a kidnapping shall be murder in the first degree, the underlying felony of kidnapping must, in three of the indictments at least, merge into the ensuing felony-murders. The appellant relies upon *Newton v. State,* 280 Md. 260, 373 A. 2d 262. *Newton,* of course, does not stand for such a proposition at all. It rather holds that if the only credible evidence before a fact finder which could justify finding that the highest degree of blameworthiness existed in a homicide case was the fact that one of the felonies spelled out in §§ 408-409 or 410 was being perpetrated, or attempted, then and only then would the undergirding felony, or its attempt, merge of necessity into the conviction for homicide. If, on the other hand, there was legally sufficient, independent evidence of wilfulness, deliberation and premeditation under Article 27, § 407, then the merger would not be compelled. *Newton v. State,* 280 Md. at 273-274. And see *Frye v. State,* 37 Md. App. 476, 378 A. 2d 155 (1977).
>
> In the present case, the clear evidence establishing premeditation could not have been more beyond dispute. This was a classic 'ambush' or 'lying in wait' case. The three murderers set out upon a

well-articulated and unequivocal scheme of luring into a trap, kidnapping, transporting to a deserted area, subjecting to an identification process at the hands of Johnnie Mae Jones and then executing all of those persons who had ostensibly robbed her. This calculated and deliberated chain of events stretched out over many miles and several hours. There was no sudden anger or mutual affray. The homicide victims were helpless targets. Under the circumstances of this case, a merger of the convictions is not remotely called for."

Our holding in *Godwin* is dispositive of the issue before us.

*Judgments affirmed.*
*Appellant to pay costs.*