JEROME JOHNSON *v.* WARDEN, MARYLAND
PENITENTIARY

[App. No. 62, September Term, 1972.]

*Decided October 24, 1972.*

Before ORTH, POWERS and GILBERT, JJ.

*Floyd L. Parks* for applicant.

*Francis B. Burch, Attorney General* and *Raymond G. Thieme, State's Attorney for Anne Arundel County,* for respondent.

ORTH, J., delivered the opinion of the Court.

In Maryland the punishment upon conviction of rape is prescribed by statute. Code, Art. 27, § 461 provides:

> "Every person convicted of a crime of rape or as being accessory thereto before the fact shall, at the discretion of the court, suffer death, or be sentenced to confinement in the penitentiary for the period of his natural life, or under-

go a confinement in the penitentiary for not less than eighteen months nor more than twenty-one years; * * *."

The statute applies to all cases in which a jury trial has been waived and the conviction rendered by the court as the trier of fact. It applies also to cases tried before a jury but there is a proviso which limits the discretion generally vested in the sentencing judge. "The jury which finds any person guilty of rape * * * may add to their verdict the words 'without capital punishment,' in which event the sentence of the court shall not exceed twenty years in the penitentiary; and in no such case in which the jury has returned a verdict including the words 'without capital punishment' shall the court in imposing sentence, sentence the convicted person to pay the death penalty or to be confined in the penitentiary for more than twenty years." Code, Art. 27, § 463.

On 29 June 1972 the Supreme Court of the United States decided three cases upon grant of certiorari. In *Furman v. Georgia*, 92 S. Ct. 2726, it reviewed two decisions of the Supreme Court of Georgia, *Furman v. Georgia* and *Jackson v. Georgia*, affirming impositions of the death penalty on defendants convicted of murder and rape, and a judgment of the Court of Appeals of Texas, *Branch v. Texas*, affirming imposition of the death penalty on a defendant convicted of rape.[1] The judgment in each case was reversed "insofar as it leaves undisturbed the death sentence imposed" and the cases were referred for further proceedings. The holding of the Court was that "the imposition and carrying out of the death sentence in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." 92 S. Ct. 2726, at 2727. The decision was rendered in a short per curiam opinion but each of the nine Justices wrote his own opinion. Five

[1]. Certiorari was also granted in a fourth case, *Aikens v. California*, but the writ was dismissed after the California Supreme Court, 450 P. 2d 258, held that capital punishment violates the State Constitution.

supported the judgments [2] and four dissented.[3] The net result appears to be that the death penalty is unconstitutional when its imposition is not mandatory.[4] In the light of *Furman*, there is no doubt that the authorization for the imposition of the death penalty upon conviction of rape as provided in § 461 must be deemed unconstitutional. See *Moore v. Illinois*, 92 S. Ct. 2562, 2570-2571.

JEROME JOHNSON was charged with rape. His trial was removed from the Circuit Court for Anne Arundel County to the Circuit Court for Kent County. On 26 August 1969 he was found guilty by a jury, who did not add the words "without capital punishment." He was sentenced to life imprisonment. He did not appeal. On 2 February 1972 he collaterally attacked the judgment through post conviction procedures. On 7 June 1972 there was a hearing on his petition and on 23 June relief was denied. Timely application was made for leave to appeal.

One of the allegations of error raised below was "that his sentence was illegal in that he was sentenced to life imprisonment when the maximum amount allowed by statute is twenty (20) years imprisonment when the Death Penalty is not an issue which can be considered by the Jury or the Court." At the hearing Johnson stated that the issue was predicated upon the Supreme Court finding capital punishment to be unconstitutional "and that unless and until this should occur the question raised

---

2. Mr. Justice Douglas, Mr. Justice Brennan, Mr. Justice Stewart, Mr. Justice White and Mr. Justice Marshall.

3. The Chief Justice, Mr. Justice Blackmun, Mr. Justice Powell, and Mr. Justice Renquist.

4. Only Justices Brennan and Marshall believed the death penalty was unconstitutional per se. Mr. Justice Douglas did not reach the point, determining that the capital punishment statutes, being discriminatory in application, were not compatible with equal protection implicit in the prohibition against cruel and unusual punishment. The basis of the rationale of the opinions of Justices Stewart and White was the infrequency and manner of the imposition of the death penalty. "Thus capital punishment in its present form was rendered 'cruel and unusual' by the operation of what was intended to be, at the time of its introduction, an ameliorative feature of the criminal justice system"—the discretion to impose a lessor sentence. 11 Cr. L. 4107.

is at best premature." His counsel conceded in a Memorandum in Support of the Petition that "clearly at this writing the law is otherwise." The hearing judge disposed of the issue by stating that "the sentence to life imprisonment was allowable and legal." *Furman* was decided six days after the denial of relief.

Johnson pursues the point in applying for leave to appeal: "that his sentence was illegal because the death penalty, clearly recently held to be 'cruel and unusual' by the Supreme Court of the United States, could not have been constitutionally considered by the Jury; thus their Verdict would have to have been 'without capital punishment' and this would place a 20 year limit on his sentence * * *."

As above pointed out the provision of Code, Art. 27, § 461 that a person convicted of a crime of rape or as being an accessory thereto before the fact shall, at the discretion of the court, suffer death, is void as unconstitutional. Therefore, the permissible punishment under that statute on conviction of those crimes is confinement in the penitentiary for life, or for a period of not more than 21 years, at the discretion of the court. We think that *Furman* has no effect on § 463. It is true that the court could not impose the death penalty whether or not the jury added the words "without capital punishment" to their verdict, but by adding those words the jury limits the maximum punishment which may be imposed to imprisonment for not more than 20 years. This may be explained to the jury. In other words it was the obvious intent of the legislature that by adding the words of limitation to their verdict the jury could preclude the imposition not only of the death penalty but also of life imprisonment. That intent may still be fulfilled. We hold that Code, Art. 27, § 463 is in full force.

It follows that Johnson's contention is without merit. The life sentence he received stands constitutionally valid in the face of *Furman*. The jury did not add the limiting words. Had they done so not only capital punishment but a life sentence would have been prohibited. They

were content to leave the sentence to the discretion of the court. The sentence it imposed was legal then and is legal now.

Johnson's other reasons why the order of the lower court should be reversed afford no basis to grant his application.

The judge below found that Johnson's trial counsel was not incompetent "in his failure to ask for a voir dire question specifically on racial prejudice when he was requested to do so" by Johnson. Johnson admitted he did not request his lawyer to propound such a question. It was stipulated that the trial court told the jurors that the victim was white and the defendant was black and then asked the jury "whether they harbored any racial or other prejudice which would prevent them from rendering a fair and impartial verdict based upon the evidence." It was shown that the jury included "four regular black jurors and one alternate black juror." The hearing judge found no error nor do we.

The question as to the voluntariness of a confession was waived under post conviction procedures. It could have been presented on direct appeal. Johnson did not meet his burden of proving the existence of special circumstances to excuse the failure to make such allegation nor to rebut the presumption that he intelligently and knowingly failed to make it. Code, Art. 27, § 645A (c) ; Maryland Rule BK48. Code, Art. 27, § 645A (d) is not here applicable. In any event the judge below found that the confession was constitutionally obtained; it was voluntarily given after Johnson had been informed of his rights under *Miranda v. Arizona,* 384 U. S. 436, understood them and knowingly and intelligently waived them. On our independent constitutional appraisal of the record before us we are in accord.

Johnson asserts that "his trial counsel and the State illegally combined to suppress evidence which could have tended to prove his innocence by keeping from the jury the fact that he had syphilis at the time the alleged rape occurred and that the victim never contracted it, thus

also tending to prove that there was no penetration, a fact never proved by the State at the original trial." Of course, as to the evidence of penetration, the sufficiency of the evidence is not a ground for post conviction relief. *Anglin v. Director,* 1 Md. App. 564. The issue of suppression of evidence was not raised in either the original or the amended petition filed by Johnson but was brought up for the first time at the hearing. He claimed it was error for the State to suppress the evidence and for his counsel not to present it to the jury. Trial counsel testified that "he learned of the disease while visiting [Johnson] on 20 August 1969 in the hospital at the Maryland Penitentiary; that he told the State's Attorney of this fact the following day and that they both agreed not to bring it up at trial." As the evidence was known to both Johnson and his counsel, there was no question of it being suppressed by the State. The defense could have offered it if it so desired. Defense counsel "thought it would be a poor defense tactic for him to bring out at the trial that his client had syphilis." Johnson testified he had the disease "at least two years before the rape and that he had been medically treated for the disease; that after his arrest he had been given blood tests but never heard the result; that later 'they gave [him] needles' at Clifton T. Perkins State Hospital for syphilis." There was no medical testimony at the hearing as to whether Johnson could or could not have transmitted the disease to the victim on the date of the rape. The hearing judge found that considering the totality of the evidence adduced at the trial, including Johnson's confession, it was a legitimate trial tactic on the part of trial counsel in any event not to bring to the attention of the jury that Johnson had syphilis. The judge also thought that the question whether or not the disease could have been transmitted to the victim was a medical one and observed that no medical testimony was offered at the hearing. Aside from any question of waiver, and even if such evidence were properly admissible at trial, we think that there was no error in the circumstances requiring reversal of

the judgment by the failure to adduce the evidence before the jury. See *McCoy v. Warden*, 1 Md. App. 108. We note that the standards by which the prosecution's conduct in a case is to be measured in determining whether a defendant has been denied a fair trial on the theory that evidence, unknown to him, has been suppressed by the prosecution are found in *Brady v. Maryland*, 373 U. S. 83. "The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense and (c) the materiality of the evidence." *Moore v. Illinois*, 92 S. Ct. 2562, 2568. Applying these standards it is clear that Johnson was not denied a fair trial.

The allegation that trial counsel was incompetent because he failed to make Johnson adequately aware of his right to appeal and to have a review of sentence was not pressed at the hearing. In any event, it appears that the trial court "following sentencing advised the Defendant in open court of his right to appeal and of his right to review of sentence. This was done at the request of defense counsel. * * * In addition, just a day or two after sentencing the defense counsel wrote [Johnson] a letter advising him of his right to appeal and that he must do so within thirty days of sentencing." Shortly thereafter Johnson wrote his counsel expressing concern as to whether he had been sentenced to "natural life" or just "life;" he made no mention of a desire to appeal. Johnson offered no testimony at the hearing tending to show that he was not informed of his right to appeal or of his right to review of sentence. The hearing court found that Johnson "was effectively and timely advised of his right to appeal and of his right to have a review of sentence." There was evidence sufficient to support this finding. The contention, which, if meritorious, would at best entitle Johnson to no more than a belated appeal and a

belated review of sentence, fails because its basis is factually incorrect.

*Application denied.*