Jerome JOHNSON

v.

STATE OF MARYLAND et al.

Civ. No. 73–576–W.

United States District Court,
D. Maryland.

Dec. 15, 1976.

Jerome Johnson, pro se.

Francis B. Burch, Atty. Gen. of Md., John P. Stafford, Jr., Mary Elizabeth Kurz, Asst. Attys. Gen., Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

WATKINS, District Judge.

Petitioner, Jerome Johnson, is presently incarcerated in the Maryland Penitentiary under a sentence of life imprisonment for rape. Petitioner was convicted by a jury on August 26, 1969, in the Circuit Court for Kent County, the Honorable George B. Rasin presiding. No appeal was taken from that conviction.

In 1972, Johnson filed an application for post conviction relief which resulted in an evidentiary hearing before Judge H. Kenneth Mackey. On June 23, 1972, the Petitioner was denied the desired relief and he subsequently sought leave to appeal that decision. The Court of Special Appeals denied his application on October 24, 1972 in a thorough and reported opinion, *Johnson v. Warden*, 16 Md.App. 227, 295 A.2d 820 (1972).

In the instant action, Johnson has petitioned the Court for a writ of habeas corpus. Construing his complaint in the liberal fashion mandated by *Ham v. North Carolina*, 471 F.2d 406 (4 Cir. 1973); *cf. Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court has determined that Johnson alleges the following different grounds on the basis of which he believes his imprisonment to be unconstitutional:

1. The petit jury, which convicted Petitioner, was not asked on voir dire whether any member thereof harbored any racial prejudice toward the defendant;

2. The Petitioner was not advised of his right to an appeal and to a review of his sentence;

3. The prosecution suppressed material, exculpatory evidence;

4. There was insufficient evidence to maintain Petitioner's conviction;

5. (a) In regard to allegations Nos. 1 thru 3, Petitioner's attorney was incompetent in failing to prevent or to remedy those errors;

(b) Also, as to No. 4, his attorney failed to give adequate representation in that he did not move for a judgment of acquittal and, thus, waived Petitioner's right to obtain appellate review of the sufficiency of the evidence.

6. Johnson was not afforded a full and fair hearing by the trial court on the issue of the voluntariness of his confession, and, in fact, that confession was not voluntarily given and was inadmissible.

7. The instructions of the trial judge to the jury as to how it should treat the confession were in some manner inadequate.

8. After the Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had rendered Petitioner's original death sentence invalid, his resentencing to life imprisonment was "illegal."

■ Before a state prisoner can demand consideration by this Court of his claims in a habeas corpus petition, he must have exhausted all of his available and effective options for relief in the state courts. 28 U.S.C. § 2254; *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Ganger v. Peyton*, 379 F.2d 709 (4 Cir. 1967). With regard to most of his allegations, Petitioner has exhausted, inasmuch as all but a few were explicitly rejected by the Maryland Court of Special Appeals, *Johnson, supra*. Furthermore, the remaining averments may be viewed as having been implicitly considered by that court as necessary to its rejection of the others. Nevertheless, whether Petitioner has exhausted his state remedies as to each specific claim is of little present consequence. The principle of exhaustion is a matter of comity rather than jurisdiction. *Picard, supra*, 404 U.S. at 275, 92 S.Ct. 509; *Wright v. Maryland Penitentiary*, 429 F.2d 1101 (4 Cir. 1970). Thus, exhaustion is not a necessary antecedent to this Court's power to dismiss claims which are patently frivolous and those few which are presented here, but which were not explicitly rejected in *Johnson, supra*, appear to be such. *Jenkins v. Fitzberger*, 440 F.2d 1188 (4 Cir. 1971); *Nash v. Maryland*, 371 F.Supp. 801, 803 (D.Md.1973). The various allegations will be treated seriatim.

*Voir Dire*

The Supreme Court, in *Ham v. South Carolina*, 409 U.S. 524, 527 [93 S.Ct. 848, 35 L.Ed.2d 46] (1973), stated that the Fourteenth Amendment required, in certain circumstances, that the court interrogate . . . the jurors upon the subject of racial prejudice. However, the Court noted that, in light of the trial court's "broad discretion as to the questions to be asked [on voir dire]," a brief, general question as to racial prejudice would appear to be sufficient. 409 U.S. at 527 [93 S.Ct. 848].

*United States v. Robinson*, No. 74–1979 (4 Cir., decided April 24, 1975) (slip opinion at 3). Petitioner complains that the jury at his trial was not appropriately questioned as to possible racial bias.

■ Clearly, Johnson is mistaken; the transcript from his trial shows that the judge inquired of the jury, as follows:

Now the . . . question is, in a case where the charge is an alleged rape [and] where the alleged victim is a white person and the accused is a black person, is there any reason [why] you cannot render a fair and impartial verdict based solely on the evidence in the case which is adduced in the courtroom during the trial? Is there any person who would have

any problem rendering a fair and impartial verdict with the accused being a black man and the alleged victim being a white woman?

(Tr. at 3.) There was no response from the jurors. The questions asked by the trial judge more than met the suggestion of the Fourth Circuit in *United States v. Johnson*, 527 F.2d 1104, 1107 (4 Cir., 1975): "A general query whether any juror is unable to judge the case fairly because of race, creed or color of the defendant should suffice." This allegation is thus without merit.

### Failure to Advise of Right to an Appeal And to a Review of Sentence

■ Petitioner complains that he was advised neither of his right to an appeal, nor of his right to a review of sentence. As to the latter contention, Johnson is again clearly mistaken. The transcript of Johnson's trial and sentencing reveals that the judge thoroughly explained to Petitioner that he had a right to request such a review and the manner in which such a review was conducted. Further, the judge twice inquired as to whether Johnson understood that explanation. In response, Petitioner twice answered, "Yes sir." (Tr. at 482.)

Johnson also alleges that he was not advised of his right to appeal his conviction. The Fourth Circuit first held such a right to exist in 1969, stating:

> [A]n indigent defendant is entitled to have counsel after his trial has been concluded for at least as long as it is necessary for counsel to advise him of his right to appeal [and] the manner and time in which to appeal . . . unless the trial court has advised the defendant in [this] regard and shouldered the burden which is otherwise that of counsel.

*Nelson v. Peyton*, 415 F.2d 1154, 1157–58 (4 Cir. 1969), *cert. denied sub nom., Cox v. Nelson*, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). The court in *Nelson* intended "to guarantee that no defendant will waive his right [to appeal] without full awareness of its existence and extent, by imposing an absolute requirement on *court or counsel* to furnish the information."

*Shiflett v. Virginia*, 447 F.2d 50, 54 (4 Cir. 1971) (emphasis added), *cert. denied*, 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972). As to precisely what information must be conveyed to the convicted defendant in order to ensure that he has been accorded his rights in this respect, any doubts are resolved within the *Nelson* opinion itself:

> [I]f the omissions of counsel have not been supplied by advice imparted by the trial court as to [1] *the right to appeal*, and [2] *the manner* and [3] *the time in which to appeal*, a defendant's Sixth Amendment right, as made applicable to the states by the Fourteenth Amendment, has been violated.

*Nelson, supra*, at 1158 (emphasis and numeration added; footnote deleted).

In the instant case, the record shows that Johnson was fully informed of his rights. Petitioner's counsel, immediately after sentencing, addressed the following remark to the court in Johnson's presence: "Your Honor, I would like to advise the defendant that he has 30 days in which to file an appeal in this case." (Tr. at 481.) In addition, counsel mailed a letter to Petitioner dated that same day, the text of which stated:

> This is to again advise you that you have thirty days from this date in which to appeal your conviction in Kent County. If you desire to do so, notify the Clerk of the Circuit Court for Kent County, Courthouse, Chestertown, Maryland.

(Tr. of Post Conviction Appeal, at 79.) There can be no doubt that Johnson was fully informed of his "right to appeal and the manner and time in which to appeal." This claim is thus without merit.

### Suppression of Evidence

■ Johnson's third allegation of error concerns the fact that Petitioner apparently had syphilis at the time of the rape, but that his victim did not contract the disease. Johnson contends that this evidence was exculpatory and that it was suppressed by the prosecution in contravention of the Supreme Court's ruling in *Brady v. Maryland*,

373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, the Court stated:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87, 83 S.Ct. at 1196.

The undisputed testimony of Johnson's trial attorney, given at the post conviction appeal hearing before Judge Mackey, demonstrates that this contention is frivolous. Counsel testified that he, not the prosecutor, discovered Petitioner's condition, and that, soon thereafter, he informed the prosecutor of this fact as a gesture of concern for the victim of the rape. He further declared that upon calling the prosecutor, defense attorney first asked, " [I]f I would give [the prosecutor] some information, would he agree [that] this wouldn't be mentioned or brought up at the trial of the case because it might be inflammatory or it might be detrimental to my client." (Tr. of Post Conviction Appeal at 75.) Counsel was not certain if the State had knowledge before the trial as to whether the victim had contracted the disease, but in light of the agreement he had made with the prosecutor not to use any evidence pertaining to this matter at trial, clearly counsel felt that such information was of little importance. In fact, at the Post Conviction Appeal proceeding, Petitioner's trial attorney responded *affirmatively* to a query by Judge Mackey, asking if he "thought it would [have been] a poor defense tactic to bring it out in the jury trial." (Tr. of Post Conviction Appeal, at 76.)

The only evidence which might have been suppressed by the prosecution was the results of medical tests on the victim to determine if she had contracted syphilis. In this situation, the prosecution did not violate *Brady's* mandate. First, those results may have been positive, in which case they would not have been "favorable to the accused" and would not have fallen within *Brady's* scope. Second, even if the tests were negative, and, thus, possibly exculpa-

tory, "where the defense knows of the existence of evidence and fails to request the same, then it cannot be said that the evidence has been unconstitutionally suppressed. *United States v. Schembari*, 484 F.2d 931, 935 (4 Cir. 1973)." *Grice v. Maryland*, Civil No. 70–505–H—Case B (D.Md., filed June 11, 1974) (citations omitted). Petitioner's claim in this regard is meritless.

## Sufficiency of the Evidence

■ Very liberally construed, Johnson's petition here may be viewed as complaining that the State's evidence against him was insufficient to support his conviction. It is well established that the sufficiency of the evidence to support a state conviction is normally a matter of state law and procedure, and it is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. *Jenkins v. Fitzberger*, 440 F.2d 1188, 1189 (4 Cir. 1971); *Grundler v. North Carolina*, 283 F.2d 798, 802 (4 Cir. 1960). Thus, in *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), the Supreme Court emphasized that the question as to whether or not a conviction was so totally devoid of evidentiary support as to render it unconstitutional under the due process clause of the Fourteenth Amendment turned "not on the sufficiency of the evidence, but on whether [the] conviction rests upon any evidence at all." *Id.* at 199, 80 S.Ct. at 625. *Jenkins, supra*, at 1189; *Williams v. Peyton*, 404 F.2d 776, 777 (4 Cir. 1969); *Grundler, supra*, at 1189.

Unquestionably, under such a standard, Johnson was fully accorded his right to due process of law. Even a cursory review of the trial transcript reveals that Petitioner's conviction was not simply bolstered by some evidence of guilt, but rather by overwhelming evidence. In addition to Johnson's signed confession (tr. at 330–31), which is the subject of close scrutiny by the Court later in this opinion, the State also placed in evidence the defendant's blood stained draft card, which was found at the scene of the crime (tr. at 241). Furthermore, one of

the investigating officers testified at the trial that he had visited the scene the morning following the crime and found a bicycle lying next to the house in which the rape had occurred. Because no one in the neighborhood could identify it, the officer brought the bike to the jail and asked Johnson if it belonged to him. Johnson's reply was affirmative (tr. at 348–52).

Obviously, more transpired at the trial than the few incidents just described. While the State's evidence was not completely free from internal contradictions, on the whole its case was more than sufficient to satisfy the due process standard applicable here. Therefore, this ground for habeas relief must also fail.

### Incompetency of Counsel

Petitioner's fifth contention is that his representation at trial was inadequate as regards the four claims so far considered. As his complaint of incompetency with relation to allegations Nos. 1, 2, and 3, is a general one, they will be considered together; immediately thereafter, the Court will deal with Johnson's specific averment of attorney error in connection with the claim considered in the preceding section.

Johnson argues that his counsel was incompetent in that he failed: (1) to question prospective jurors as to any possible racial prejudice they might have harbored against Petitioner; (2) to advise Petitioner of his right to appeal and to a review of sentence; and (3) to introduce into evidence the facts that Johnson had syphilis at the time of the rape and, yet, the victim did not contract the disease. For purposes of federal habeas corpus, the Fourth Circuit has consistently adhered to the following standard for determining the adequacy of the legal representation afforded an accused:

> It is generally held that mere mistakes or errors of counsel are not sufficient to establish a violation of the defendant's constitutional right. It is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that

the prisoner was deprived of his constitutional rights.

*Snead v. Smyth,* 273 F.2d 838, 840 (4 Cir. 1959); *accord, Miller v. Cox,* 457 F.2d 700, 701 (4 Cir.), *cert. denied,* 409 U.S. 1007, 93 S.Ct. 433, 34 L.Ed.2d 299 (1972); *Bennett v. Maryland,* 425 F.2d 181, 182 (4 Cir.), *cert. denied,* 400 U.S. 881, 91 S.Ct. 126, 27 L.Ed.2d 120 (1970); *Kearney v. Peyton,* 360 F.2d 589, 590 (4 Cir. 1966); *Root v. Cunningham,* 344 F.2d 1, 3 (4 Cir.), *cert. denied,* 382 U.S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965).

As regards contentions 1 and 2, Petitioner's charges of inadequate representation are patently frivolous, and were demonstrated to be such by the first two sections of this opinion. The jury which convicted Johnson was fully questioned as to possible racial prejudice, and it is worth noting that four regular and one of the alternate jurors were black. *Johnson v. Warden,* 16 Md.App. 227, 232, 285 A.2d 820, 823 (1972). Also, the record from the post conviction appeal hearing shows that Johnson was indeed advised of his right to appeal and to a review of sentence.

Johnson's complaint that his attorney was incompetent in failing to introduce the evidence of syphilis is no more than a dispute over counsel's informed decision as to the manner in which to conduct the defense. Mere errors in trial tactics, presuming this to be one, do not constitute incompetency of counsel. *Bennett, supra,* at 182.

Petitioner also alleges that his counsel was incompetent in failing to move for a verdict of acquittal, a motion which would have preserved the Defendant's right to appeal his conviction on the issue of sufficiency of the evidence. *See Jackson v. State,* 214 Md. 454, 460, 135 A.2d 638, 641 (1957). Once again Petitioner's claim is simply erroneous. Immediately following the close of the State's case, Johnson's attorney presented the court with a written Motion for Judgment of Acquittal. Despite an objection from the prosecutor and some reluctance on the part of the judge to entertain that motion, counsel argued his

point vigorously, albeit unsuccessfully, to the bench. (Tr. at 362–68.) Again, at the close of all the evidence, the defense attorney renewed his motion, and, although not readily discernable from the trial transcript, it is apparent that it was again denied. (Tr. at 423.)

Therefore, the Petitioner's contention that the quality of his legal representation was less than adequate is totally lacking in merit. Even assuming, with hindsight, that the trial attorney did not exercise the highest degree of skill in executing those decisions about which Petitioner now complains (an unjustifiable assumption in light of the foregoing discussion), a review of the entire transcript indicates that any possible omissions neither collectively nor individually transformed the trial into a farce or mockery of justice. *Bennett, supra,* at 182.

### *Voluntariness of the Confession*

In his sixth assertion of error, Petitioner attacks the admission into evidence of the statement which he gave to the investigating detectives shortly after his arrest. Johnson claims both that the confession was involuntary, and that he was not afforded a full and fair hearing prior to trial to determine its voluntariness. Basically, a two-step consideration is required. First, it must be determined if the state court adequately developed the historical facts upon which resolution of the constitutional issues must rest. If it is held that the state court has done so, then this Court must independently apply the correct constitutional standard to the facts. *See Brown v. Allen,* 344 U.S. 443, 506–07, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Frankfurter, J., concurring); *Smith v. Peyton,* 408 F.2d 1009, 1011 (4 Cir. 1968).

In *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court decided that a defendant who objects to the admission of his confession is entitled to a hearing prior to trial, which must be "fully adequate to insure a reliable and clear-cut determination of the voluntariness of [that] confession, including the resolution of disputed facts upon which

[that] issue may depend." *Id.* at 391, 84 S.Ct. at 1788. Johnson apparently feels that he was not accorded such a hearing. However, after a review of the record, this Court must disagree.

Before opening statements of counsel, the defense moved to suppress Johnson's statement, resulting in an immediate hearing before the trial judge. The major thrust of the motion was that Petitioner had not been informed, either before or during his interrogation, of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It was also argued that, even if he was in fact apprised of his rights, Johnson was unable, because of his low level of intelligence, to comprehend their meaning, and thus could not have "voluntarily, knowingly, and intelligently" waived those rights. *Id.* at 444, 86 S.Ct. 1602.

Three witnesses were called at the suppression hearing; Johnson himself was the first. He testified that nothing was read to him the night of his arrest (tr. at 24, 44–46), that he could not read, write or spell (tr. at 21, 54–55), and that he could not understand the language of the *Miranda* warnings anyway (tr. at 25–27, 54–55); but, he also said that he had passed through the eleventh grade in school (tr. at 21), that he had held a job (tr. at 32), that he had not been threatened or harassed by the police (tr. at 53), and that he could sign his name (tr. at 21). Additionally, the defense introduced a report from the Clifton T. Perkins State Hospital, where Petitioner had been examined. The report stated that although Johnson was mildly retarded, he was capable of understanding the nature and object of the proceedings against him and of assisting in his defense.

The other two witnesses were policemen who had been present during Johnson's interrogation. The arresting officer testified that he had read the *Miranda* rights to the suspect immediately upon his apprehension (tr. at 83–84). He also stated that they were again read to Petitioner at the stationhouse (tr. at 91) and this was corroborated by the second policeman (tr. at 128),

who in fact had performed that duty. The latter officer testified that he had tried to insure that Johnson understood by "breaking the whole rights bit down in plainer language." (Tr. at 130–31.) The policemen's testimony was in agreement on two other important points; i.e., that Johnson had stated at the time of the interrogation that he understood the explanation of his rights notwithstanding the fact that he had refused to sign a form to that effect (tr. at 94, 132); and, that after he had indicated his willingness to give a statement, Petitioner was again asked whether he wished an attorney to be present (tr. at 104, 134).

 The above account makes it clear that the exclusionary hearing at the trial court fulfilled the mandate of *Jackson v. Denno, supra.*[1] The trial judge heard the differing testimony of both Petitioner and the interrogating officers and was thus enabled to "resolve the disputed facts upon which the voluntariness issue [depended]." *Id.* at 391, 84 S.Ct. at 1788. He was also able to judge for himself the Petitioner's mental abilities and comprehension and to decide whether Johnson could have and in fact did understand his rights. Therefore, the Petitioner's complaint in this respect is meritless.

Following the hearing, the judge made findings of fact after carefully considering all of the evidence (tr. at 148–52) and marshalling it in support of his judgment; those findings are fully supported by the record. The consequences of such a determination by the federal habeas court were addressed in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963): "If [the federal district judge] concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, he may, and ordinarily should, accept the facts as found in

the hearing." *Id.* at 318, 83 S.Ct. at 760. Accordingly, the facts, as found by the state court, are adopted by this Court. *See also* 28 U.S.C. § 2254(d) (statutory embodiment of the *Townsend* decision).

To address Johnson's second contention concerning the allegedly unconstitutional use of his confession, this Court must determine the correct constitutional standard and independently apply it to the facts as found in the state court and accepted here. Again, this is a multifaceted inquiry; it begins with *Miranda v. Arizona, supra,* where the Supreme Court held that the prosecution may not use statements derived from custodial interrogation, unless it is shown that certain, specified warnings were given to the defendant and that he waived his rights, as set forth in those warnings, "voluntarily, knowingly, and intelligently." *Id.* at 444, 479, 86 S.Ct. 1602.

Whether or not the *Miranda* warnings were read to the Petitioner before his interrogation is a question of fact. The trial judge stated bluntly: "From the testimony that the Court has heard, the Court chooses to believe the testimony of the officers." (Tr. at 152.) Thus, by implication, the judge found that Johnson had the full warnings read to him at least twice. There is ample evidence in the record to support that finding and this Court has adopted it.

 Once it is established that the *Miranda* warnings were given, the last constitutional barrier to the ratification by this Court of the use of a confession by the prosecution against a defendant is the requirement that the confession be voluntarily made. However, this determination itself demands a dual inquiry: First, whether the rights enumerated in the *Miranda* warnings were "voluntarily, knowingly and intelligently" waived by the detainee, *Miranda, supra,* at 444, 479, 86 S.Ct. 1602;

---

1. Another question which relates to this textual discussion is whether a state fact-finding obviates the need for relitigation of the factual issues in a federal habeas proceeding. The constitutional standard was set forth by the Supreme Court in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and was well summarized by the Court's declaration that "a federal evidentiary hearing is required unless the state court trier of fact has, after a full hearing, reliably found the relevant facts." *Id.* at 312–13, 83 S.Ct. at 757 (footnote omitted). As this Court has determined that the hearing in the state court on the issue here presented was both full and fair, no federal evidentiary hearing is required.

and, second, whether the subsequent confession was the result of a voluntary decision of the detainee, and not "the product of coercion, either physical or psychological." *Rogers v. Richmond,* 365 U.S. 534, 540, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961). Nevertheless, while these are two distinct considerations, they are governed by interrelated constitutional standards.

■ The validity of a defendant's waiver of his constitutional rights depends on the particular circumstances of each case including the background, experience, and conduct of the accused, *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1692, 82 L.Ed. 1461 (1938); *United States v. Hayes,* 385 F.2d 375, 377 (4 Cir. 1967); and, an important factor is the person's intellectual capabilities. *Wright v. North Carolina,* 483 F.2d 405, 409 (4 Cir. 1973), *cert. denied,* 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974). *See also Stokes v. Peyton,* 437 F.2d 131, 136 (4 Cir. 1970). Similarly, the voluntariness of the confession depends on whether the totality of the circumstances indicates that the statement was extracted by prosecutorial coercion. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969). Necessarily, in resolving these two issues, this Court must weigh many of the same factors. In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court found an opportunity, by way of dicta, to examine the latter of these two subjects in language which is instructive as to both. Quoting with approval from *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1964), the Court stated that the test of voluntariness for a confession is whether it is the "product of an essentially free and unconstrained choice of its maker." *Schneckloth, supra,* 412 U.S. at 225, 93 S.Ct. at 2047. In elaborating upon "the characteristics of the accused and the details of the interrogation," which are relevant to voluntariness, the Court instructed that one must assess

the totality of all the surrounding circumstances . . . . Some of the factors taken into account have included the youth of the accused, his lack of education or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food and sleep. In all . . . cases, the court [has determined] the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted.

*Id.* at 226, 93 S.Ct. at 2047 (citations omitted).

It is not altogether clear what burden of proof the prosecution must bear in *initially* demonstrating the knowing, intelligent and voluntary nature of a defendant's waiver of his rights and *then* proving the voluntariness of his confession. The Fifth Circuit, in *United States v. Watson,* 469 F.2d 362 (5 Cir. 1972), when faced with this bifurcated issue, commenced its discussion by identifying both parts as facets of a common inquiry:

This court feels that there is only one basic issue . . . and that that is admissibility. This ultimate determination involves the determination of several subsidiary issues . . . . The notion of "voluntariness" runs all through these . . . . [T]he proper analysis is that no statement can indeed be "voluntary" unless there is a finding of knowing and intelligent waiver. . . . The determination of all these issues therefore underlies a finding of "voluntariness" which in turn, is the key to "admissibility".

*Id.* at 363.

■ Next, the court in *Watson* considered the impact of *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In that case, the Supreme Court decided that although the states are free to adopt a higher standard, the Constitution requires only that the prosecution prove by a pre-

ponderance of the evidence that a confession is voluntary before it can be used at trial. Until 1974, the "beyond a reasonable doubt" standard had prevailed in the Fourth Circuit, see *Ralph v. Warden*, 438 F.2d 786, 793 (4 Cir. 1970); in that year, after analyzing *Lego* and citing *Watson* as precedent, the court stated: " [W]e read the plain thrust of [the Supreme Court's] opinion as a direction that the federal courts shall follow the preponderance standard." *United States v. Johnson*, 495 F.2d 378, 383 (4 Cir. 1974).

In *Johnson*, the circuit court was speaking only to the voluntariness of a confession issue; in *Watson*, the Fifth Circuit, in line with the concept that all the sub-queries are directed at only one target, interpreted *Lego* as mandating that "the proper standard by which to judge 'admissibility,' with all its constituent parts, is preponderance of the evidence." *Watson, supra*, at 364. In light of the broad language in *Johnson*, and the apparent approval by the Fourth Circuit of the *Watson* case, this Court accepts the preponderance standard for both sub-issues.

██ Using that standard, this Court readily holds that Johnson's confession was voluntarily given to the police. The entire course of investigation, from the moment the first police officer was summoned to the time the Petitioner signed the confession, was less than five hours. There is no evidence that coercion in any manifestation was used by the police. While the trial judge's oral opinion is somewhat obscure on this precise point, it is obvious from the testimony, the judge's remarks, and his ruling that he found, as does this Court, that the confession was freely volunteered.

But, as the *Watson* analysis demonstrates, a finding of voluntariness as to the confession is of no avail if the defendant never fully understood his rights and voluntarily waived them. Here, as at the trial level, this is the most difficult question to resolve. The Court's task is eased, however, because the trial judge addressed the issue fully:

The Court must decide between the two versions which is correct, [i. e.], whether or not this defendant relinquished his known constitutional right[s] in such a manner as to say that it was [an] understanding and intelligent relinquishment and abandonment of . . . known right[s]. If you believe his testimony, obviously, he didn't understand anything and the confession would not be admissible. On the other hand, [the Court must weigh] the officers' testimony and take into consideration a further statement in the report of the Clifton T. Perkins Hospital to the effect that it was the unanimous opinion of the medical staff that the defendant is currently able . . . to understand the nature and object of the proceedings against him and to assist in his defense, that he was capable of understanding and did, in fact, understand and, therefore, having understood did relinquish his rights when he voluntarily stated that he changed his mind about giving a statement.

The counsel for defendant has cited [another] case . . . in which the same effort was made to set up the fact that an accused with less than average intelligence was incapable of really understanding the *Miranda* warnings. In that case the IQ was somewhere in the 80's.

However, it seems to this member of the bench that if a person is, upon examination by the Department of Mental Hygiene, . . . found to be capable of understanding the nature of the proceedings against him and assisting with his defense that that is an element to be considered as to whether or not he's capable of understanding rather simple English language. [One officer] goes on to testify that he not only read him the language but also broke it down and attempted to explain it to him.

From the testimony that the Court has heard, the Court chooses to believe the testimony of the officers. Now, [in agreement] with this report from the Clifton T. Perkins Hospital, [the Court] finds, in fact, that this defendant did

understand the *Miranda* warnings and did by his own acts of first refusing to sign the statement that he understood what was said to him, then signing and agreeing to give certain [hair] samples and then later signing a statement that he changed his mind and wanted to give a statement, that all this adds up to the fact that the defendant did, in fact, understand what he was told, [and] understood what his rights were when he voluntarily gave a statement. . . .

(Tr. at 151–52.)

Evaluating the Petitioner's subjective ability to comprehend the events of October 16–17, 1969, and in particular the *Miranda* warnings then read to him is not a task which can be easily or accurately accomplished here, many years later. The Court has accepted the trial judge's findings of historical fact, including those just quoted above. There is nothing in the record upon which to base a challenge to those findings; they support the final conclusion of voluntariness and admissibility for the confession far beyond the requisite preponderance of the evidence, and this Court so holds. *See Wright v. North Carolina*, 483 F.2d 405, 408–09 (4 Cir. 1973), *cert. denied*, 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974). Petitioner's sixth allegation of error must fail.[2]

## Jury Instructions

From his citation of *Barnhart v. Maryland*, 5 Md.App. 222, 246 A.2d 280 (1968), the Court has construed Johnson's next assertion to be a complaint that the trial court's instructions to the jury with regard to how it should treat the confession were inadequate. A brief review of the instructions reveals that they comport with the established Maryland procedure, *see Barnhart, supra*, 5 Md.App. at 224–26, 246 A.2d 280.[3]

▆▆ In any event, jury instructions are a matter of state law for which federal habeas corpus relief cannot be granted, absent circumstances impugning fundamental fairness. *Grundler v. North Carolina*, 283 F.2d 798, 802 (4 Cir.), *cert. denied*, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960). No such circumstances have been alleged here, and none appear in the record. The Petitioner's seventh claim fails also.

## Validity of Life Sentence

In his final allegation of error, Petitioner asks the Court, "Was the life sentence illegal because not over 20 years can be given when the death penalty is not an issue which can be considered by the jury or the court?" The apparent rationale behind this query is not difficult to explain. Johnson was sentenced under a statute which allowed the sentencing judge three choices: The death penalty, life imprisonment, or confinement for not less than eighteen months nor more than twenty-one years. Ch. 284 [1935] Laws of Maryland (repealed in 1975; now *Md.Ann.Code*, Art. 27, § 461 (1975)). However, upon a finding of guilt, a jury could add the words "without capital punishment," and thereby eliminate the first two sentencing alternatives. Ch. 22, § 545A [1949] Laws of Maryland. The jury did not include those words with their pronouncement of Johnson's guilt, and, focusing upon the violence which had accompanied the perpetration of the rape, the judge

---

**2.** Another averment which could possibly be read into the Petitioner's references to the confession is that the suppression hearing at the trial court was held in the presence of the jury. If this is one of Johnson's complaints, it is of no help to him, as once more, the transcript shows clearly that the facts were otherwise. *See* tr. at 13.

**3.** Maryland adheres to the "Massachusetts Rule," which was described approvingly by the Supreme Court, *Jackson v. Denno*, 378 U.S. 368, 378 n. 8, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in the following manner:

> [T]he judge hears the confession evidence, himself resolves evidentiary conflicts and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. It is only the latter confessions that are heard by the jury, which may then, under this procedure, disagree with the judge, find the confession involuntary and ignore it.

sentenced the defendant to life imprisonment.

On June 9, 1972, the Supreme Court delivered a per curiam opinion in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), with five separate concurrences. As generally understood, the Court there held that the imposition and carrying out of the death penalty, in the haphazard manner in which it was then being administered, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. In light of *Furman*, the Maryland Court of Appeals declared that the imposition of the death sentence under any discretionary statutes of Maryland, such as the one applied to Johnson, is unconstitutional. *Bartholomey v. State*, 267 Md. 175, 297 A.2d 696 (1972); *Johnson v. State*, 271 Md. 189, 315 A.2d 524 (1974); *Johnson v. Warden, Md. Penitentiary*, 16 Md.App. 227, 295 A.2d 820 (1972).

Petitioner asserts that the jury at his trial could not have considered the application of the death penalty and still remain faithful to the Constitution, as construed in *Furman*. Thus, in the Petitioner's mind, the verdict must, by law, be held to have included the mandate, "without capital punishment" and any period of incarceration imposed upon him would be limited to less than twenty-one years. The Maryland Court of Special Appeals fully considered this point in Petitioner's post conviction appeal, *Johnson v. Warden, Md. Penitentiary, supra*, 16 Md.App. at 228–32, 295 A.2d 820, and held that *Furman* had no effect on Ch. 22, § 545A [1949] Laws of Maryland, that that section was "still in force," and that the sentence the trial judge imposed "was legal then and is legal now." *Id.* at 231–32, 295 A.2d at 823. *See also Blackwell v. Maryland*, 365 A.2d 545, 549–50 (Court of Appeals of Maryland, 1976).

 Federal habeas corpus is available to state prisoners solely to vindicate rights secured by the Constitution of the United States, 28 U.S.C. § 2241(c)(3); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Peyton v. Rowe*, 383

F.2d 709 (4 Cir. 1967), *aff'd.*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). The question presented, both to the state court and here, and decided by the Maryland Court of Special Appeals in *Johnson v. Warden, Md. Penitentiary, supra*, is a matter of state law only. *Pringle v. Beto*, 424 F.2d 515, 516 (5 Cir. 1970); *Beto v. Sykes*, 360 F.2d 411, 412 (5 Cir. 1970). A constitutional defect in the sentence imposed does not affect the validity of the underlying conviction. *Moore v. Illinois*, 408 U.S. 786, 800, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1968); *Witherspoon v. Illinois*, 391 U.S. 510, 523 n. 2, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Brown v. Maryland*, Civil No. T–76–601 (D.Md., October 15, 1976). The proper procedures attendant upon sentencing are for the determination of the state, *Cherry v. Texas*, 361 F.Supp. 1284, 1287–88 (N.D.Tex. 1973). "[T]he federal courts have no right to review any sentence of a state court which does not exceed the statutory maximum sentence which may be imposed under the laws of the state." *Stevens v. Warden*, 382 F.2d 429, 433 (4 Cir. 1967), *cert. denied*, 390 U.S. 1031, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968). Here, the state courts have decided that Johnson's life sentence is within the bounds of state law; his allegation of a misapplication of state law is not a ground for federal habeas corpus relief. *Beck v. Washington*, 369 U.S. 541, 554–55, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *Grundler v. North Carolina*, 283 F.2d 798 (4 Cir.), *cert. denied*, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960). Johnson's eighth and final ground for the issuance of a writ of habeas corpus must fail.